IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELEVATE RECOGNITION, LLC,
a Delaware Limited Liability Company,

    Plaintiff,

v.                          CASE NO:_____

BEYOND 360 LTD.,          Trial by Jury Demanded
An England and Wales Private Company,

    Defendant.
_____/

## COMPLAINT

The Plaintiff, ELEVATE RECOGNITION, LLC, a Delaware limited liability company, sues the Defendant, BEYOND 360 LTD, an England and Wales private company, for breach of contract and fraud and alleges:

## THE PARTIES

1. Plaintiff ELEVATE RECOGNITION, LLC ("ELEVATE") is a limited liability company duly organized under the laws of the State of Delaware with its principal place of business in Tampa, Florida.

2. Defendant BEYOND 360 LTD ("BEYOND 360") is a private company duly organized under the laws of England and Wales with its registered office at 5 Merchant Square, Merchant Square, London, United Kingdom.

## **JURISDICTION AND VENUE**

3. This is a suit for breach of contract for damages in excess of $75,000. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332.

4. This Court has personal jurisdiction over BEYOND 360 because BEYOND 360 agreed in the contract at issue between the parties that "… the courts of England and the [c]ourts of Tampa, Florida, have exclusive jurisdiction to settle any dispute or claims arising out of or in connection with this agreement, its subject matter or its formation …." Personal jurisdiction further exists in this Court pursuant to Fla. Stat. §48.193(1)(a)(6) because BEYOND 360 "[e]nter[ed] into a contract that complies with [Fla. Stat.] §685.102." Personal jurisdiction further exists in this Court pursuant to Fla. Stat. §48.193(1)(a)(6) because BEYOND 360 "[c]aused injury to [ELEVATE] within [Florida] arising out of an act or omission by [BEYOND 360] outside [Florida]" while "engaged in solicitation or service activities within [Florida]" pursuant to Fla. Stat. §48.193(1)(a)(6)(a). In addition, personal jurisdiction over BEYOND 360 satisfies the Due Process Clause of the Fourteenth Amendment.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §§1391(b)(2)-(3) & (c)(3).

## **GENERAL ALLEGATIONS**

6. By 2019, BEYOND 360 represented to others that it had developed a software platform that it made available through subscription services (the "Subscription Services") over the Internet "for the purpose of helping businesses empower their employees to engage and collaborate across the workplace."

7. To assist with its marketing and sales of the Subscription Services, BEYOND 360 sought out other entities (hereafter, the "channel partners") to appoint by contract to offer the Subscription Services to the public.

8. ELEVATE was formed specifically to act as a channel partner with BEYOND 360 pursuant to an agreement.

9. Effective October 31, 2019, ELEVATE and BEYOND 360 (the "Parties") entered into the "Channel Partner Agreement" through which BEYOND 360 appointed ELEVATE on a non-exclusive basis to offer the Subscription Services in a geographical area that includes the United States.

10. In the Channel Partner Agreement, BEYOND 360 represented that "the market for the resale of the Subscription Services … in the United States is sufficient for [ELEVATE] to maintain a profitable business."

11. One of ELEVATE's main concerns regarding the proposed Channel Partner Agreement as initially drafted by BEYOND 360 was the

fact that nothing prohibited BEYOND 360 from competing with ELEVATE for customers for the Subscription Services in the United States.

12. As the developer and licensor of the Subscription Services, BEYOND 360 would have obvious advantages, such as pricing advantages, if allowed to compete with ELEVATE in the United States.

13. To protect ELEVATE from competition from BEYOND 360, the parties added the following to the Channel Partner Agreement:

> 15.4 … [ELEVATE] may immediately terminate the agreement without liability to [BEYOND 360] if:
>
> 15.4.1 [BEYOND 360] competes against [ELEVATE] in the United States for sales or resales of the Subscription Services except through other licensees; [or]
>
> 15.4.2 In its dealings with its channel partners, [BEYOND 360] favours over [ELEVATE] any other [BEYOND 360] channel partner in such a way as to put [ELEVATE] at a competitive disadvantage with respect to reselling Subscription Services[.]

14. During the latter half of 2020 into early 2021, ELEVATE entered into discussions with Mr. Paul Shoker, the founder and CEO of BEYOND 360, regarding the possible acquisition by ELEVATE of BEYOND 360 technology.

15. During those discussions, Mr. Shoker made clear that BEYOND 360's business model was going to shift, that BEYOND 360 intended to build a domestic salesforce and support staff in the United States to sell its software directly in the United States, and that BEYOND 360 intended to increase license fees on most if not all of its channel partners in the United States to make it prohibitively expensive for them to maintain or renew their channel partner agreements with BEYOND 360.

16. Through these discussions, ELEVATE also became aware that BEYOND 360 had given the owners of an entity called Yofi Wellness shares in BEYOND 360 in exchange for rights to certain intellectual property owned by Yofi Wellness.

17. Moreover, BEYOND 360 came to own all of Yofi Wellness in 2018.

18. BEYOND 360 has continued to own all shares of Yofi Wellness since 2018.

19. Thus, at all relevant times, Yofi Wellness has for all practical purposes been the alter ego of and equivalent to BEYOND 360.

20. Yofi Wellness, an entity wholly owned by BEYOND 360, has been offering the Subscription Services to potential customers in the United States since at least 2019.

21. Yofi Wellness, an entity wholly owned by BEYOND 360, has been offering the Subscription Services to potential customers in the United States in competition with ELEVATE since the effective date of the Channel Partner Agreement between the Parties.

22. Upon information and belief, BEYOND 360 has also competed with ELEVATE for sales of the Subscription Services in the United States through an entity named Centricity.

23. BEYOND 360 appointed Colin Eagan, the owner of Centricity, and Brian Schneider, the executive vice-president of Centricity, as corporate directors of BEYOND 360 in March 2021.

24. Despite utilizing its best efforts, ELEVATE has been unable to effectuate any sales of the Subscription Services since entering the Channel Partner Agreement.

25. Upon information and belief, part of the reason why ELEVATE has been unable to effectuate any sales of the Subscription Services since entering the Channel Agreement is because BEYOND 360 has been acting in violation of Sections 15.4.1 and/or 15.4.2 of the Channel Partner Agreement.

26. On April 14, 2021, ELEVATE terminated the Channel Partner Agreement effectively immediately due to ELEVATE's violations of Sections 15.4.1 and/or 15.4.2 thereof.

27. To date, ELEVATE has paid BEYOND 360 $100,000 pursuant to the Channel Partner Agreement.

## COUNT I
## Breach of Contract

28. Paragraphs 1 through 27 are incorporated and realleged hereto as if set forth fully herein.

29. This is an action for breach of contract against BEYOND 360.

30. BEYOND 360 violated the Channel Partner Agreement by breaching Section 15.4.1 thereof by competing unfairly against ELEVATE in the United States through Yofi Wellness, Centricity and/or itself or other channel partner(s) for the sales of the Subscription Services.

31. BEYOND 360 has further violated the Channel Partner Agreement by breaching Section 15.4.2 thereof by favoring Yofi Wellness, Centricity and/or other channel partner(s) over ELEVATE in such a way as to put ELEVATE at a competitive disadvantage with respect to reselling Subscription Services.

32. BEYOND 360's violations of Sections 15.4.1 and/or 15.4.2 date back to the very day that the Parties entered into the Channel Partner Agreement.

33. ELEVATE has been damaged as a result of BEYOND 360's breach of the Channel Partner Agreement both through the payment of

money to BEYOND 360 and through its expenditure of money to try to sell the Subscription Services in the United States. These damages total in excess of $100,000.

## COUNT II
## Fraudulent Inducement

34. Paragraphs 1 through 27 are incorporated and realleged hereto as if set forth fully herein.

35. This is an action for fraudulent inducement against BEYOND 360.

36. At the time BEYOND 360 entered into the Channel Partner Agreement with ELEVATE, BEYOND 360 owned Yofi Wellness.

37. At the time BEYOND 360 entered into the Channel Partner Agreement with ELEVATE, Yofi Wellness was already trying to sell the Subscription Services in the United States.

38. At the time BEYOND 360 entered into the Channel Partner Agreement with ELEVATE, BEYOND 360 knew that Yofi Wellness would continue to try to sell the Subscription Services in the United States.

39. Nevertheless, BEYOND 360 represented and agreed in the Channel Partner Agreement in Section 15.4.1 that it would not compete against ELEVATE in the United States for sales or resales of the Subscription Services except through other licensees.

40. As BEYOND 360 owned Yofi Wellness, Yofi Witness was not a mere licensee of BEYOND 360.

41. To the contrary, the actions of Yofi Wellness constituted actions of BEYOND 360.

42. BEYOND 360's representation that it would not compete against ELEVATE in the United States for sales or resales of the Subscription Services except through other licensees constituted a fact material to ELEVATE entering into the Channel Partner Agreement.

43. BEYOND 360's representation that it would not compete against ELEVATE in the United States for sales or resales of the Subscription Services except through other licensees was false at the time it was made and BEYOND 360 knew or should have known that it was false.

44. BEYOND 360 was aware at the time that it entered into the Channel Partner Agreement of the importance of this representation to ELEVATE.

45. BEYOND 360 intended to induce ELEVATE into entering the Channel Partner Agreement through this false representation.

46. ELEVATE justifiably relied on this false representation and has suffered damages as a result.

47. At the time BEYOND 360 entered into the Channel Partner Agreement with ELEVATE, BEYOND 360 had given the prior owners of Yofi

Wellness shares in BEYOND 360 and BEYOND 360 had come to own Yofi Wellness.

48. Nevertheless, BEYOND 360 represented and agreed in the Channel Partner Agreement in Section 15.4.2 that in its dealings with its channel partners, BEYOND 360 would not favor over ELEVATE any other BEYOND 360 channel partner in such a way as to put ELEVATE at a competitive disadvantage with respect to reselling Subscription Services.

49. This representation was a fact material to ELEVATE entering into the Channel Partner Agreement.

50. As channel partner Yofi Wellness was already owned by BEYOND 360 at the time that the Parties entered into the Channel Partner Agreement, BEYOND 360 knew or should have known that this representation was necessarily false at the time it was made. As a part of BEYOND 360, Yofi Wellness inherently had a competitive advantage over ELEVATE in numerous areas including but not limited to information regarding software functions and developments, pricing, and influence into BEYOND 360's actions regarding the Subscription Services and the channel partners.

51. BEYOND 360 intended to induce ELEVATE into entering the Channel Partner Agreement through this false representation.

52. ELEVATE justifiably relied on this false representation and has suffered damages as a result.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ELEVATE demands:

1. That Defendant BEYOND 360 be found liable for breach of contract and fraudulent inducement and ordered to pay for all damages sustained by ELEVATE by reason of the breach of contract and fraudulent inducement.

2. That ELEVATE have and recover its costs; and

3. That ELEVATE have such further relief as is deemed just and proper.

## **TRIAL BY JURY**

Demand is hereby made for trial by jury.

Dated this 16th day of April, 2021.

*/s/ Joseph Weissman*
JOSEPH J. WEISSMAN, FBN 0041424
(Trial Counsel)
JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP
401 E. Jackson Street, Suite 3100
Tampa, Florida  33602
E-Mail:  josephw@jpfirm.com
(813) 225-2500
(813) 223-7118


*Attorneys for Plaintiff*

#6952695